[Cite as *Crawford v. Am. Family Ins. Co.*, 2023-Ohio-1069.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| LESLIE CRAWFORD | : | |
| | : | |
| Appellant | : | C.A. No. 29588 |
| | : | |
| v. | : | Trial Court Case No. 2019 CV 05973 |
| | : | |
| AMERICAN FAMILY INSURANCE COMPANY et al. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 31, 2023

. . . . . . . . . . .

JONATHON L. BECK & NATALIE M.E. WAIS, Attorneys for Appellee

JOHN A. SMALLEY, Attorney for Appellant

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Plaintiff-Appellant, Leslie Crawford, appeals from a summary judgment rendered in favor of Defendant-Appellee, American Family Insurance Company ("AFIC"). According to Crawford, the trial court erred in granting summary judgment based on her failure to produce expert testimony on the issue of whether AFIC acted in bad faith.

Crawford contends that expert testimony cannot be required as a matter of law in bad faith cases.

{¶ 2} Upon consideration, we find that the trial court incorrectly established a blanket rule requiring insured claimants, as a matter of law, to provide expert testimony in bad faith cases. Ohio courts have not uniformly established such a requirement, even in the area of professional negligence claims against insurance agents. However, this is not a professional negligence case, nor is an insurance adjuster a "professional" for these purposes. Instead, this case involves a bad faith claim against the insurer. There is no basis for imposing such a standard as a matter of law, and the circumstances of each case should be considered. In addition, AFIC took a contrary position in the trial court, stating that Crawford did not need an expert. Furthermore, even if this were otherwise, the deposition of AFIC's claims adjuster provided sufficient evidence of standards and what conduct would be required to avoid a bad faith claim.

{¶ 3} Finally, while AFIC contends that the judgment should be affirmed on alternate grounds, the record clearly indicates that the trial court failed to consider evidentiary materials that were submitted. We therefore decline to exercise de novo review on this basis. Accordingly, Crawford's sole assignment of error will be sustained, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.


I. Facts and Course of Proceedings

{¶ 4} This action arose from an automobile accident that occurred between

Crawford and Tonna Marilee Brown on August 10, 2018. On December 16, 2019, Crawford filed a complaint against AFIC and Brown, alleging that Brown was an uninsured driver at the time of the accident and had negligently caused Crawford damage and injury. In a second claim for relief, Crawford alleged that she was insured for uninsured motorists ("UM") coverage with AFIC and that she had complied with all policy provisions. However, AFIC had refused to pay under the terms of the policy. The third claim for relief alleged that AFIC had acted in bad faith in adjusting Crawford's claim.

{¶ 5} On February 6, 2020, AFIC filed an answer to the complaint and a cross-claim for subrogation against Brown. After learning that the party who had been served with the complaint had insurance and had not been involved in the accident, Crawford filed an amended complaint on February 26, 2020, naming the correct Tonna Brown at the address listed in the accident report, which was on Gettysburg Avenue in Dayton, Ohio. AFIC then filed an amended answer and cross-claim against Brown on March 11, 2020. However, service attempts at the Dayton address and at a North Carolina address for Brown were unsuccessful.

{¶ 6} On March 20, 2020, AFIC asked the court to bifurcate the bad faith claim and stay discovery on bad faith issues until the contract claim was resolved. In response, Crawford agreed to bifurcation but asked the court not to delay discovery. Subsequently, on April 9, 2020, the court granted the motion to bifurcate. However, the court also said it would not stay discovery at that time.

{¶ 7} Crawford was finally able to perfect service on Brown and filed a motion for default judgment against her on July 28, 2020. The court then granted a default

judgment against Brown on July 29, 2020.

{¶ 8} After holding a pretrial conference, the court issued a pretrial order setting a November 1, 2021 jury trial and a summary judgment deadline of August 3, 2021. The case was also referred to mediation, which was held on June 17, 2021, but mediation was unsuccessful. Then, on the joint request of the parties for a continuance, the trial was continued until July 25, 2022, and the summary judgment deadline was extended to April 26, 2022.

{¶ 9} On April 5, 2022, AFIC filed a motion seeking to exclude testimony from Crawford's expert, Matthew Bruder, because he was a member of the law firm representing Crawford and therefore had a financial stake in the outcome of the case. Crawford did not respond to this motion, and there is no record in the file of a court decision on the matter.

{¶ 10} On April 29, 2022, Crawford filed a motion asking the court to release documents that had been submitted under seal, and the court, finding the documents discoverable, ordered their release on May 2, 2022. The parties later entered into an agreed protective order stipulating that documents AFIC designated as confidential would be kept confidential. The order also outlined various conditions and provisions related to these documents. On the same day, the court continued the July 25, 2022 trial date and granted AFIC until June 1, 2022, to file a motion for summary judgment.

{¶ 11} On June 1, 2022, AFIC filed its motion for summary judgment, and Crawford responded on June 22, 2022. Subsequently, on June 24, 2022, the parties filed an entry of settlement and partial dismissal, indicating that Crawford's first and second claims for

relief in the amended complaint had been settled and that the bad faith claim remained pending. On August 5, 2022, AFIC filed a reply memorandum in support of summary judgment.

{¶ 12} On September 8, 2022, the trial court filed a decision granting summary judgment to AFIC on the bad faith claim. The court's decision was based solely on the conclusion that "the question of whether American Family acted in bad faith is one that requires expert testimony to answer." Decision, Order and Entry Sustaining Motion for Summary Judgment (Sept. 8, 2022) ("Decision"), p. 4. Because Crawford had not offered expert testimony, the court found that summary judgment was proper.

{¶ 13} This timely appeal followed.

## II.  Discussion

{¶ 14} Crawford's sole assignment of error states that:

The Trial Court Erred in Granting the Defendants-Appellees' Motion for Summary Judgment.

{¶ 15} Crawford contends that the trial court erred in requiring expert testimony for bad faith claims as a matter of law. According to Crawford, a reasonable juror could have found that AFIC HAD breached its duty without the need for expert testimony because AFIC's employee testified about standards and duties owed to an insured. Crawford further argues that expert testimony is unneeded where a breach of professional duty is within a layman's common understanding. In response, AFIC argues that expert testimony is required in all circumstances. In addition, AFIC contends that summary

judgment should have been granted in its favor anyway because the claim was "fairly debatable," and it did not act in bad faith. Before addressing these points, we will briefly outline the relevant summary judgment standards.

A. Summary Judgment Standards

{¶ 16} The scope of summary judgment review is well established. We review such judgments de novo, "which means that we apply the same standards as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.). In de novo review, we independently review trial court decisions and accord them no deference. *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997).

{¶ 17} "Summary judgment is appropriate if (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). " 'As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *Turner v. Turner*, 67 Ohio St.3d 337, 340, 617 N.E.2d 1123 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   Finally, "because summary judgment is a procedural device to terminate litigation, it must be awarded with caution."   *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359, 604 N.E.2d 138 (1992).

### B.   Requirement of Expert Testimony

{¶ 18} In finding that expert testimony was required as a matter of law, the trial court did not cite any case law.   Instead, the court noted it had "consistently" held to the same effect in "similar cases" (without citing any) and referenced only Evid.R. 702.   In defending the trial court's blanket rule, AFIC has cited cases requiring expert testimony on professional negligence claims against insurance agents and equates them to bad faith claims against insurers.

{¶ 19} As a preliminary point, neither side raised the issue of whether expert testimony was needed.   The trial court raised the matter independently and did not give Crawford an opportunity to respond.   To counter this, AFIC says that the deficiency was already the subject of a prior motion.   AFIC Brief, p. 9, referring to "Mot. To Exclude Testimony."   This mischaracterizes the motion, however.   AFIC's April 5, 2022 Motion to Exclude Expert Testimony had nothing to do with whether expert testimony is required in bad faith cases.   Instead, AFIC asked the court to exclude testimony from Matthew Bruder, the attorney who had represented Crawford during most of the claims process. The exclusion request was based on the fact that Bruder was still a member of the firm representing Crawford and therefore had a financial stake in the case's outcome.   *Id.* at p. 1-2.   The trial could never ruled on the motion (or at least no written ruling is in the

record).

{¶ 20} Furthermore, AFIC stated in the trial court that "Plaintiff is not required to have an expert to proceed to trial on a bad faith claim * * *." AFIC Reply Memorandum in Support of Summary Judgment (Aug. 5, 2022), p. 6. This is inconsistent with AFIC's position on appeal.

{¶ 21} Turning to whether expert testimony was required as a matter of law, Evid.R. 702 states, as relevant here, that "A witness may testify as an expert if all of the following apply: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons." Notably, the rule is permissive; it does not mandate expert testimony. Rather, it simply describes instances where expert testimony may assist a jury. To evaluate whether an expert might be needed in the current situation, we look first to the law on bad faith.

{¶ 22} "It is well established in Ohio that an insurer has a duty to act in good faith in the settlement of a third-party claim." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 275, 452 N.E.2d 1319 (1983). The reasons for this include an insured party's lack of a voice in policy preparation; the parties' economic disparity; and a claimant's vulnerability and susceptibility to oppression due to his or her grim financial straits at the time of the claim. *Id.* In *Hoskins*, the court equated the duty in third party claims "to act in good faith and accept reasonable settlements" with "the duty of an insurer to act in good faith in handling the claims of its own insured," stating that these "are merely two different aspects of the same duty." *Id.* at 275-276. A breach of this duty gives rise to a cause

of action in tort against the insurer and can include punitive damages in certain circumstances. *Id.* at paragraph one and two of the syllabus.

{¶ 23} In such cases, the insurer's liability "does not arise from its mere omission to perform a contract obligation, for it is well established in Ohio that it is no tort to breach a contract, regardless of motive. * * * Rather, the liability arises from the breach of the positive legal duty imposed by law due to the relationships of the parties." *Id.* at 276.

{¶ 24} In *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 187 N.E.2d 45 (1962), the Supreme Court of Ohio stated that:

A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.

*Id.* at paragraph two of the syllabus.

{¶ 25} *Slate*r and another case, *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 590 N.E.2d 1228 (1992), were overruled on other grounds in *Zoppo v. Homestead Ins. Co.,* 71 Ohio St.3d 552, 644 N.E.2d 397 (1994). In *Zoppo*, the court stressed that until its decision in *Said*, "the element of intent had been notably absent from this court's definition of when an insurer acts in bad faith." *Id.* at 554. Instead, the court had "applied the 'reasonable justification' standard to bad faith cases." *Id.* Under this standard, " 'an insurer fails to exercise good faith in the processing of a claim of its insured

where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.' "  *Id*., quoting *Staff Builders, Inc. v. Armstrong*, 37 Ohio St.3d 298, 303, 525 N.E.2d 783 (1988).   The court further emphasized that intent had never been part of this standard.   *Id*. at 555.   In the context of reasonable justification, the court had also previously said that "such a belief may not be an arbitrary or capricious one."  *Hart v. Republic Mut. Ins. Co.*, 152 Ohio St. 185, 188, 87 N.E.2d 347 (1949).  *Accord Hoskins*, 6 Ohio St.3d at 277, 452 N.E.2d 1319.

{¶ 26} In a recent case, the Supreme Court of Ohio remarked that "[j]urisprudence addressing 'good faith' when it is used at common law and or in the Revised Code provides some general insight into its ordinary meaning, but that jurisprudence also provides fertile ground for disagreement."  *State ex rel. Ohio History Connection v. Moundbuilders Country Club Co.*, Ohio Slip Opinion No. 2022-Ohio-4345, ___ N.E.3d ___, ¶ 28.   The court further acknowledged that "bad faith" and "good faith" had been defined simply by reference to each other.   *Id*. at ¶ 30.   However, distinguishing objective factors can apply.   For example, "behavior that is unreasonable, uninformed, or irrational in light of the circumstances can establish a lack of good faith irrespective of the party's subjective intentions."  *Id*., citing *Worth v. Huntington Bancshares, Inc.*, 43 Ohio St.3d 192, 197, 540 N.E.2d 249 (1989), and *Zoppo* at paragraph one of the syllabus. Thus, "a person can potentially demonstrate a lack of good faith by acting unreasonably or failing to meet justified expectations."  *Id*. at ¶ 31.

{¶ 27} In responding to Crawford's assignment of error, AFIC asserts that professional negligence claims against insurance agents require expert testimony about

the standards of care. As an extension of this concept, AFIC argues that expert testimony is likewise necessarily required for assessing an insurer's duty to act in good faith towards its insured. AFIC Brief at p. 9-10, citing authority from the Fifth and Eighth Appellate Districts. This is not a universal view.

{¶ 28} Discussing the same cases, the Tenth District Court of Appeals stated that "[t]his court has not previously adopted a requirement of expert testimony in a negligence action against an insurance agent, and the trial court did not do so in granting summary judgment in favor of appellees." *Nichols v. Schwendeman*, 10th Dist. Franklin No. 07AP-433, 2007-Ohio-6602, ¶ 25, discussing *MBE Collection, Inc. v. Westfield Cos., Inc.*, 8th Dist. Cuyahoga No. 79585, 2002-Ohio-1789, and *Associated Visual Communications v. Erie Ins. Group*, 5th Dist. Stark No. 2006 CA 00092, 2007-Ohio-708, ¶ 65-66. S*ee also Burlington Ins. Co. v. Artisan Mechanical, Inc.*, 188 Ohio App.3d 560, 2010-Ohio-3142, 936 N.E.2d 114, ¶ 14 (1st Dist.) ("[t]here is no blanket rule requiring expert testimony against an insurance broker in all cases"); *Horak v. Nationwide Ins. Co.*, 9th Dist. Summit No. CA 23327, 2007-Ohio-3744, ¶ 32, quoting *Nielsen Ents., Inc. v. Ins. Unlimited Agency, Inc.*, 10th Dist. Franklin No. 85AP-781 (May 8, 1996) ("While the law has recognized a public interest in fostering certain professional relationships, such as the doctor-patient and attorney-client relationships, it has not recognized the insurance agent-client relationship to be of similar importance.")

{¶ 29} Even if such a rule were unanimously followed, this case is not a professional negligence action; it involves a bad faith claim. Furthermore, our research has failed to disclose authority in Ohio discussing the status of claims representatives or

adjusters or classifying them as the type of professionals whose conduct, like that of a doctor, might not be readily understood by jurors. The parties have also not cited any such cases.

{¶ 30} What little authority we could find (on an unrelated subject) indicated that a claims adjuster was classified as an administrative employee, rather than as a professional employee, for purposes of applying an exemption from overtime pay requirements. *See Spence v. Grange Mut. Cas. Co.*, 10th Dist. Franklin No. 81AP-284, 1981 WL 3378, *1 (July 30, 1981). Consequently, there would be no basis for applying a law requiring expert testimony for professional negligence in this situation, even if such a view were either uniformly followed or applicable to bad faith actions.

{¶ 31} This is not to say that an insurance adjuster could not qualify as an expert, provided appropriate criteria were met, or that an expert might not be needed to understand complex cases. However, there is no legal basis for adopting a blanket rule that expert testimony is required as a matter of law. The circumstances of each situation should be considered. Some cases may be readily understood by laypersons; others may not.

{¶ 32} Furthermore, as Crawford points out, the AFIC adjuster who handled her claim testified about various standards, including: the duty to "fully and fairly investigate, evaluate objectively, and to make a reasonably justifiable offer to resolve * * * claims"; an insurer's payment requirements under both medical and UM coverage; the impropriety of using a "cookie-cutter" approach to claims; the need to consider any relevant information about pain and suffering; the need to respond to an insured's attorney and provide

needed information; Ohio law as to what can be considered in deciding the reasonable value of medical expenses and services; the impropriety of failing to consider an insured's statement when deciding value; and the responsibility of adjusters to treat insured parties fairly. Deposition of Brian Dooley, p. 13, 14-16, 21-22, 42, 55-57, 78, and 79. In addition, Dooley testified in detail about the claims process, as well as the meaning of insurance terms and tools used in the claims process.

{¶ 33} This is consistent with a case that AFIC has cited to support the fact that the standard of conduct in bad faith cases must be established by expert testimony. AFIC Brief at p. 10-11, citing *Furr v. State Farm Mut. Auto. Ins. Co.*, 128 Ohio App.3d 607, 716 N.E.2d 250 (6th Dist.1998). In *Furr*, the plaintiff had recovered a bad faith judgment, and the insurer claimed on appeal that the trial court had erred in denying its motion to exclude the witness. *Id*. at 618. Ironically, the insurer's position was the opposite of what AFIC expresses here, i.e., the insurer claimed the expert's "testimony was not beyond the knowledge or experience possessed by laypersons or used to dispel a misconception among laypersons." *Id*. After reviewing the testimony, the court of appeals decided the trial court did not abuse its discretion in allowing the expert to testify. *Id*. at 618-619.

{¶ 34} There is a difference between finding that discretion was not abused in allowing a particular expert's testimony and formulating a standard that such testimony is always required. Nonetheless, the testimony described in *Furr* is similar to the matters that AFIC's adjuster outlined. Specifically:

In his testimony, Levin [the expert] explained casualty insurance,

uninsured motorist insurance, reserves, bad faith claims, the Ohio Administrative Code, how claims are processed and investigated, and an insurance company's duty to its insured. After being given a factual scenario of the case, Levin testified that the claim was handled in a manner well below appropriate standards of care and that there was no reasonable justification for the delays and the failure by Milwaukee to make payment on the claim. We find that the trial court did not abuse its discretion in finding that Levin's testimony either relates to matters beyond the knowledge or experience possessed by laypersons or dispels a misconception common among laypersons. *See* Evid.R. 702(A).

*Furr* at 618.

**{¶ 35}** Other than failing to specifically state that the claim here was handled consistently with industry standards (although this was implied), Dooley's deposition contained essentially the same information as that of the expert in *Furr*.[1] A jury could have understood this information and decided whether AFIC acted in bad faith. Accordingly, we agree with Crawford that even if testimony on standards were required, it was provided in Dooley's deposition. This does not mean that some type of additional

---

[1] Dooley did not discuss the Ohio Administrative Code, which the expert in *Furr* had mentioned. However, a later decision of the Sixth District Court of Appeals held that "evidence of alleged violations of the UCSPA does not constitute evidence of bad faith, and it was error for the trial court to admit such evidence." *Brummitt v. Seeholzer*, 6th Dist. Erie No. E-16-020, 2019-Ohio-1555, ¶ 38 (referencing the Unfair Claims Settlement Practices Act (UCSPA), as found in Ohio Adm.Code 3901-1-54). Consequently, asking Dooley about these regulations would have been irrelevant. In *Brummitt*, the court also noted that *Furr* declined to address this point because the insurer in that case did not object at trial and no plain error occurred. *Id.* at ¶ 31.

testimony could not be helpful to a jury.   However, it was not required as a matter of law.

{¶ 36} Based on the preceding discussion, the trial court erred in granting summary judgment on the basis that Crawford was required to provide expert testimony as a matter of law.   Crawford's assignment of error is sustained.

### C.   Request to Affirm on Different Grounds

{¶ 37} In its brief, AFIC has asked us to affirm the trial court even if it erred in adopting a blanket rule concerning experts.   According to AFIC, it had a reasonable basis for its valuation of the claim, and Crawford cannot establish that its decision was "totally arbitrary."   AFIC Brief at p. 17.   AFIC also argues that the situation here simply involved a mere disagreement over the value of general damages and did not justify a bad faith claim.   *Id*. at p. 19.   In response, Crawford contends that genuine issues of material fact existed concerning whether AFIC acted in bad faith.

{¶ 38} The Supreme Court of Ohio has " 'consistently held that a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof.' "   *Salloum v. Falkowski*, 151 Ohio St.3d 531, 2017-Ohio-8722, 90 N.E.3d 918, ¶ 12, quoting *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990).   *See also Verbillion v. Enon Sand & Gravel, LLC*, 2021-Ohio-3850, 180 N.E.3d 638, ¶ 99 (2d Dist.) (noting "established principle that appellate courts may affirm based on reasoning that differs from that of the trial court").

{¶ 39} A contrasting principle expressed by the Supreme Court of Ohio is that:

An appellate court reviewing a trial court's decision to grant a Civ.R.

56(C) motion must look at the evidence in a light most favorable to the non-moving party, construing all doubt in favor of that party. The court of appeals concluded that its independent consideration of the record could, in effect, cure the trial court's failure to examine the evidence. We cannot accept that conclusion. A reviewing court, even though it must conduct its own examination of the record, has a different focus than the trial court. If the trial court does not consider all the evidence before it, an appellate court does not sit as a reviewing court, but, in effect, becomes a trial court. The clear language of Civ.R. 56(C) prevents us from sanctioning the interpretation given by the court of appeals.

*Murphy*, 65 Ohio St.3d at 360, 604 N.E.2d 138.

{¶ 40} In *Murphy*, the trial court stated at an oral hearing that it had not reviewed the summary judgment motion or the parties' briefs. *Id.* at 359. In this circumstance, the Supreme Court of Ohio found the trial court clearly had not conducted even a "cursory review" and that the court of appeals had erred in affirming the summary judgment. *Id.* at 359-360.

{¶ 41} Appellate courts generally apply "a basic presumption of regularity in the proceedings below. In other words, absent an affirmative demonstration on the record that the trial court failed to review all of the summary judgment materials before it, an appellate court will presume that it did." *B.F. Goodrich Co. v. Commercial Union Ins.*, 9th Dist. Summit No. 20936, 2002-Ohio-5033, ¶ 42, citing *Montgomery v. John Doe 26*, 141 Ohio App.3d 242, 250, 750 N.E.2d 1149 (10th Dist.2000). (Other citations omitted.)

**{¶ 42}** We cannot apply such a presumption here. The trial court's decision does not indicate that it reviewed any materials filed in connection with the summary judgment motions. As noted, the court did not refer to any specific facts or arguments but found, as it had in other cases, that failure to have an expert required judgment in AFIC's favor as a matter of law. These omissions might not necessarily be sufficient to prevent us from considering whether to affirm the judgment on other grounds after reviewing the record. However, having examined the record, we find that the trial court did not review all the materials. Specifically, Crawford filed a substantial number of documents under seal to be used in connection with her response to summary judgment. *See* Plaintiff's Notice of Filing under Seal (June 24, 2022) (containing Bates Nos. AmFam 000001-001919). These documents were from AFIC's claims file and detailed everything that occurred during the claims process. Notably, the envelope in which the documents were filed was sealed and had not been opened before it arrived in our court.

**{¶ 43}** Under similar circumstances, courts have refused to conduct further de novo review of the summary judgment decision and have reversed and remanded the case. *See Moravec v. Hobeika*, 1st Dist. Hamilton No. C-990622, 2000 WL 282439, *1 (Mar. 21, 2000) (remanding the case for the second time due to the fact that a deposition bore an unbroken seal, meaning the trial court did not consider the evidence); *Oriana House, Inc. v. Ohio Ethics Comm.*, 10th Dist. Franklin No. 05AP-427, 2005-Ohio-6475, ¶ 11-12 (the trial court had not reviewed all the evidence); *Bay Mechanical & Elec. Corp. v. 2D Constr. Co., LLC,* 9th Dist. Lorain No. 17CA011136, 2019-Ohio-1170, ¶ 20 (reversing and remanding because it was unclear if the trial court had considered all the

evidence, and the trial court also did not indicate which summary judgment grounds were valid); *Meekins v. City of Oberlin*, 8th Dist. Cuyahoga No. 106060, 2018-Ohio-1308, ¶ 24 (declining to conduct de novo summary judgment review because it was clear the trial court had not reviewed the evidence); *Peterson v. Martyn*, 10th Dist. Franklin No. 17AP-39, 2018-Ohio-2905, ¶ 52 (declining to conduct de novo review and affirm based on an issue that the trial court failed to rule on, since the court did not consider deposition evidence). *See also Bentley v. Pendleton*, 4th Dist. Pike No. 03CA722, 2005-Ohio-3495, ¶ 10 (the trial court erred in the only summary judgment ground it considered, and an appellate court should not be the first court to consider other issues); *Alcus v. Bainbridge Twp.*, 11th Dist. Geauga No. 2019-G-0206, 2020-Ohio-626, ¶ 30 ("[w]here the trial court does not rule on a summary judgment argument because it finds it moot, it is not proper for the appellate court in the first instance to address the argument").

{¶ 44} Accordingly, we decline to exercise de novo review of the alternate basis for affirming the trial court and will remand the case for further proceedings. In this vein, we find the following comments instructive concerning the difference between summary judgment consideration and trial in bad faith cases:

Although Colonial [the insurer] presents various good points in support of its position, this court concludes judgment cannot be granted as a matter of law in this case. As to the "fairly debatable" precedent, the case does not merely state: "Where a claim is fairly debatable the insurer is entitled to refuse the claim * * *;" the law continues: "as long as such refusal is premised on a genuine dispute over either the status of the law at the

time of the denial or the facts giving rise to the claim." *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 700, 590 N.E.2d 1228 (1992). A failure to reasonably investigate before arriving at a legal or factual position can give rise to liability. *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 554, 644 N.E.2d 397 (1994) (finding evidence from which the jury could conclude the insurer failed to conduct an adequate investigation on cause of fire and was not reasonably justified in denying the insured's claim).

Furthermore, the applicable test for a judge or jury to apply at trial is not purely applicable at the summary judgment stage. The ultimate issue for trial is whether the insurer's handling of the claim or refusal to pay the claim was done in good faith, meaning whether it was "predicated upon circumstances that furnish reasonable justification therefor." *Zoppo*, 71 Ohio St.3d at 554. At the summary judgment stage, the issue is not whether Colonial proved it handled the claim in good faith and had reasonable justification for its conduct throughout the handling of its insured's claim.

If the insured moved for summary judgment, the issue would be whether some reasonable mind could find the insurer did not handle the claim in good faith, i.e. whether some reasonable mind could find the insurer's conduct was not reasonably justified. *See* Civ.R. 56(C). Surely, reasonable minds could find the claim was fairly debatable and the refusal was premised on a genuine dispute over either the status of the law at the

time of the denial or the facts giving rise to the claim. However, Appellant [the insured] was not seeking summary judgment; he was the non-movant.

Considering the combination of acts and omissions, it cannot be said the record is devoid of any evidence tending to show a lack of good faith. *See, e.g., Mentor Chiropractic Ctr., Inc. v. State Farm Fire & Cas. Co.*, 139 Ohio App.3d 407, 411, 744 N.E.2d 207 (11th Dist.2000) ("Summary judgment is appropriately granted to the defendant on a claim of bad faith where the record is devoid of any evidence tending to show a lack of good faith on the part of the defendant."). Even if certain circumstances would not individually qualify as bad faith conduct, the overall circumstances are relevant and must be viewed in the light most favorable to Appellant.

Rational inferences must be drawn and doubts must be resolved in Appellant's favor*. See, e.g., Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 11; *Leibreich v. A.J. Refrig., Inc.*, 67 Ohio St.3d 266, 269, 617 N.E.2d 1068 (1993); *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121, 413 N.E.2d 1187 (1980) (a court "may not weigh the proof or choose among reasonable inferences."). Upon doing so, this court concludes some rational trier of fact could find a lack of good faith in some aspects of Colonial's claim handling in this case.

*Marshall v. Colonial Ins. Co.*, 7th Dist. Mahoning No. 15 MA 0169, 2016-Ohio-8155, ¶ 80-84.

### III.   Conclusion

**{¶ 45}** Crawford's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

. . . . . . . . . . . . .


TUCKER, J. and HUFFMAN, J., concur.